John R. Till        SBN 178763 JTill@PaladinLaw.com
Melanie A. Mariotti  SBN 309000  MMariotti@PaladinLaw.com
PALADIN LAW GROUP® LLP
1176 Boulevard Way
Walnut Creek, CA 94595
Telephone:    (925) 947-5700
Facsimile:    (925) 935-8488

Counsel for Shapiro Associates, LP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAPIRO ASSOCIATES, a California limited partnership,<br><br>*Plaintiff*,<br><br>*v.*<br><br>SOON TAE YANG, dba THINK CLEAN CLEANERS; MI J. YANG, dba THINK CLEAN CLEANERS; ESTATE OF RAYMOND E. MENZIE, DECEASED, dba NORGE LAUNDRY VILLAGE, dba SUNSHINE CENTER; SHARON L. MENZIE a/k/a SHARON L. DIONNE, dba NORGE LAUNDRY VILLAGE, dba SUNSHINE CENTER; ESTATE OF ROBERT BIANCALANA, DECEASED; SUE BIANCALANA, an individual; GRACE KIM dba THINK CLEAN CLEANERS; WILLIAM BUCK dba THINK CLEAN CLEANERS; KATHERINE BUCK dba THINK CLEAN CLEANERS, and DOES 1 to 50<br><br>*Defendants*. | Case No.<br><br>COMPLAINT FOR:<br><br>1. Abatement of an Imminent and Substantial Endangerment RCRA § 7002(a)(1)(B)<br>2. Cost Recovery under CERCLA § 107(a)<br>3. The Hazardous Substance Account Act<br>4. Continuing Public Nuisance<br>5. Continuing Private Nuisance<br>6. Continuing Trespass<br>7. Negligence<br>8. Ultrahazardous Activity<br>9. Waste<br>10. Breach of Contract<br>11. Contractual Indemnity<br>12. Equitable Indemnity<br>13. Declaratory Relief<br><br>Jury Trial Demanded |

Plaintiff Shapiro Associates, LP ("Plaintiff" or "Shapiro") brings this action against

Defendants Soon Tae Yang, dba Think Clean Cleaners; Mi J. Yang, dba Think Clean Cleaners;

Estate of Raymond E. Menzie, Deceased, dba Norge Laundry Village, dba Think Clean Cleaners;

Sharon L. Menzie a/k/a Sharon L. Dionne, dba Norge Laundry Village, dba Think Clean Cleaners;

Estate of Robert Biancalana, Deceased dba Think Clean Cleaners; Sue Biancalana dba Think Clean



Cleaners; Grace Kim dba Think Clean Cleaners; William Buck dba Think Clean Cleaners; and Katherine Buck dba Think Clean Cleaners (collectively, "Defendants"), allege upon knowledge as to its own acts, and upon information and belief as to the acts of all others, as follows:

## NATURE OF THE ACTION

1.      The area of contamination for which Plaintiff seeks relief includes the property located at 389-397 Miller Avenue, Mill Valley, California (the "Property" or the "Shopping Center") which has been adversely impacted by the Chemicals of Concern and areas, both vertical and horizontal, to which the Chemicals of Concern contamination is at, migrating to or from, or the area that the Chemicals of Concern are now located or threaten to become located at or in the vicinity of the Property (collectively, the "Site").

## PARTIES

### *Plaintiff*

2.      Shapiro, the current property owner, has owned the Property and Shopping Center since at least 1970.

3.      Shapiro is the successor in interest to the previous landowner, who was the successor in interest to the prior landowner, who transferred the Property and Shopping Center to Shapiro in approximately April 1967 and approximately 1950 respectively.

### *Defendants*

4.      Soon Tae Yang is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1996 to the present.

5.      Mi J. Yang is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1996 to the present.

6.      Estate of Raymond Menzie, Deceased, ("Raymond Menzie") is named as a defendant herein to the extent of his estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  Raymond Menzie was an individual who owned and operated Norge Laundry Village and Think Clean Cleaners at the Shopping Center from at least 1965 until approximately 1985.



7.      Sharon Menzie a/k/a Sharon L. Dionne is an individual who owned and operated Norge Laundry Village and Think Clean Cleaners at the Shopping Center from at least 1965 until approximately 1985.

8.      Estate of Robert Biancalana, Deceased, ("Robert Biancalana") is named as a defendant herein to the extent of his estate's assets whether distributed or undistributed and pursuant to California Probate Code §§ 550 through 555 to establish the decedent's liability for which he was protected by liability insurance policies.  Robert Biancalana was an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1970 until approximately 1985.

9.      Sue Biancalana is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1970 until approximately 1985.

10.     Grace Kim is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1982 until approximately 1996.

11.     William Buck is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1980 until approximately 1987.

12.     Katherine Buck is an individual who owned and operated the Think Clean Cleaners dry-cleaning business at the Property from approximately 1980 until approximately 1987.

13.     Plaintiff is unaware of the true names, capacities, or basis for liability of Defendant DOES 1 through 50, inclusive, and therefore sues said Defendants by their fictitious names. Plaintiff will amend this Complaint to allege the DOE Defendants in when the DOE Defendants' true names, capacities, or basis for liability has been ascertained by Plaintiff.  Plaintiff is informed and believes and thereon alleges that Defendant DOES 1 through 50, inclusive, and each of them are in some manner liable to Plaintiff.

### JURISDICTION, VENUE, AND NOTICE

14.     This Court has jurisdiction over the subject matter of Plaintiff's First Cause of Action pursuant to Section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a) and Second Cause of Action pursuant to section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607.  In



addition, this Court has jurisdiction over Plaintiff's Thirteenth Cause of Action under the federal Declaratory Judgment Act, 28 U.S.C. § 2201; and 28 U.S.C. § 1331.

15. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Third through Twelfth Causes of Action because those claims are so related to the federal claim in this action that they form the same case and controversy under Article III of the U.S. Constitution.

16. Venue is proper in this Court pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(b) because the actual and threatened endangerment, injury and damage at issue are taking place and have taken place in this district.

17. Plaintiff provided notice of the actual and threatened endangerment, injury and damage alleged herein in its Notice of Endangerment to: (a) the Administrator of the United States Environmental Protection Agency ("U.S. EPA"); (b) the State of California; and (c) each of the RCRA Defendants or their successors in interest.

18. Plaintiff then waited at least ninety (90) days after mailing the notice before filing the RCRA cause of action against the RCRA Defendants

19. Plaintiff has satisfied all jurisdictional prerequisites to filing this Complaint.

## GENERAL ALLEGATIONS

### *History of dry-cleaning operations at the Shopping Center*

20. Think Clean Cleaners was a dry-cleaning business that operated at the Property.

21. Think Clean Cleaners operated on the Property from approximately 1965 until present.

22. Norge Laundry Village operated on the Property from approximately 1965 to approximately 1985.

23. Think Clean Cleaners was owned and operated by Defendant Raymond Menzie from approximately 1965 until approximately 1985.

24. Norge Laundry Village was owned and operated by Defendant Raymond Menzie from approximately 1965 until approximately 1985.

25. Think Clean Cleaners was owned and operated by Defendant Sharon Menzie from approximately 1965 until approximately 1985.



26.     Norge Laundry Village was owned and operated by Defendant Sharon Menzie from approximately 1965 until approximately 1985.

27.     Think Clean Cleaners was owned and operated by Defendant Robert Biancalana from approximately 1965 until approximately 1985.

28.     Norge Laundry Village was owned and operated by Defendant Robert Biancalana from approximately 1965 until approximately 1985.

29.     Think Clean Cleaners was owned and operated by Defendant Sue Biancalana from approximately 1965 until approximately 1985.

30.     Norge Laundry Village was owned and operated by Defendant Sue Biancalana from approximately 1965 until approximately 1985.

31.     Think Clean Cleaners was owned and operated by Defendant William Buck from approximately 1985 until approximately 1996.

32.     Think Clean Cleaners was owned and operated by Defendant Katherine Buck from approximately 1985 until approximately 1996.

33.     Think Clean Cleaners was owned and operated by Defendant Grace Kim from approximately 1985 until approximately 1996.

34.     Think Clean Cleaners is currently owned and operated by Defendant Soon Tae Yang. Defendant Soon Tae Yang's ownership and operation started in approximately 1996.

35.     Think Clean Cleaners is currently owned and operated by Defendant Mi J. Yang. Defendant Mi J. Yang's ownership and operation started in approximately 1996.

36.     Think Clean Cleaners used, stored, treated, handled, disposed of or released PCE during its operations at the Property.

37.     Defendant Raymond Menzie exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

38.     Defendant Sharon Menzie exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

39.     Defendant Robert Biancalana exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.



40.     Defendant Sue Biancalana exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

41.     Defendant William Buck exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

42.     Defendant Katherine Buck exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

43.     Defendant Grace Kim exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

44.     Defendant Soon Tae Yang exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

45.     Defendant Mi J. Yang exercised control over the operations of Think Clean Cleaners at the Property, including the use, storage, treatment and handling of PCE.

46.     The dry-cleaning equipment owned and operated by Defendant Soon Tae Yang at the Property uses or used PCE.

47.     The dry-cleaning equipment owned and operated by Defendant Mi J. Yang at the Property uses or used PCE.

48.     The dry-cleaning equipment owned and operated by Defendant Raymond Menzie at the Property used PCE.

49.     The dry-cleaning equipment owned and operated by Defendant Sharon Menzie at the Property used PCE.

50.     The dry-cleaning equipment owned and operated by Defendant Robert Biancalana at the Property used PCE.

51.     The dry-cleaning equipment owned and operated by Defendant Sue Biancalana at the Property used PCE.

52.     The dry-cleaning equipment owned and operated by Defendant William Buck at the Property used PCE.

53.     The dry-cleaning equipment owned and operated by Defendant Katherine Buck at the Property used PCE.



54.   The dry-cleaning equipment owned and operated by Defendant Grace Kim at the Property used PCE.

### *PCE Contamination*

55.   The Site has been adversely impacted by the presence of tetrachloroethylene ("PCE") and its breakdown chemicals -- trichloroethylene ("TCE"), 1,2 dichloroethene ("DCE"), and vinyl chloride (collectively, "Chemicals of Concern"), other hazardous substances, and other solid and hazardous wastes.

56.   PCE is an industrial solvent that has been used in significant quantities in the dry-cleaning industry since the 1940s.

57.   Common synonyms for PCE include perc, perchlor, carbon bichloride, carbon dichloride, ethylene tetrachloride, petrochlorothylene, perclene, perk, perchloroethene, 1,1,2,2-tetrachloroethylene, and tetrachloroethene.

58.   PCE degrades to trichloroethylene ("TCE"), which in turn degrades to 1,2 dichloroethene ("DCE"), which in turn degrades to vinyl chloride, which in turn degrades to ethene, and finally to carbon dioxide, water, and free chlorine.

59.   TCE is a breakdown chemical of PCE.

60.   DCE is a breakdown chemical of PCE.

61.   Vinyl chloride is a breakdown chemical of PCE.

62.   PCE is a manmade chemical.

63.   TCE is a manmade chemical.

64.   DCE is a manmade chemical.

65.   Vinyl chloride is a manmade chemical.

66.   PCE is not naturally occurring in the environment.

67.   TCE is not naturally occurring in the environment.

68.   DCE is not naturally occurring in the environment.

69.   Vinyl chloride is not naturally occurring in the environment.

70.   As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, PCE is closely regulated by the state of California and the federal government.



71.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, TCE is closely regulated by the state of California and the federal government.

72.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, DCE is closely regulated by the state of California and the federal government.

73.     As a toxic, long-lived, volatile, chlorinated hydrocarbon and likely carcinogen, vinyl chloride is closely regulated by the state of California and the federal government.

74.     PCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14), and state law, Cal. Health & Safety Code § 25281(h).

75.     TCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

76.     DCE is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

77.     Vinyl chloride is a hazardous substance as that term is defined in federal law, 42 U.S.C. § 9601(14) and state law, Cal. Health & Safety Code § 25281(h).

78.     When PCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

79.     When TCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

80.     When DCE is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

81.     When vinyl chloride is discarded or disposed of into the environment, including soil, groundwater, or surface water, it becomes a hazardous waste and solid waste as defined in federal law, 42 U.S.C. § 6903(5), (27), respectively.

82.     All groundwater within the state of California, including the groundwater at and emanating from the Site is "water of the state" pursuant to California Water Code § 13050.



83.    Each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, generation, release, or disposal of Chemicals of Concern in the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, because each Defendant released or otherwise discarded Chemicals of Concern, or controlled and/or operated the Property or business from which Chemicals of Concern were released or otherwise discarded, and failed to prevent or abate the contamination caused by the Chemicals of Concern.

84.    At various times from approximately 1965 to present, Defendants intentionally, negligently, suddenly, and accidentally caused or contributed to the presence of Chemicals of Concern in the environment, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California, at the Site.

85.    Once the various discharges of Chemicals of Concern, whether intentional, sudden and accidental, or otherwise were released into the environment, these Chemicals of Concern continued to spread and migrate within the environment in, at, and around the Site, including soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California.

86.    As a result of the discovery of the contamination, the Department of Toxic Substances Control ("DTSC") required Plaintiff to enter into a voluntary cleanup agreement. The voluntary cleanup agreement has caused Plaintiff to incur response costs, including the payment of DTSC's oversight costs, in order to investigate and remediate the contamination at the Site.

87.    As a result of Defendants' releases of Chemicals of Concern at the Site, Plaintiff has incurred and will continue to incur response costs and/or remedial costs in order to investigate, mitigate, and remediate the contamination, including research and identification of potentially responsible parties, initial or preliminary investigation costs, initial or preliminary monitoring costs, mitigation costs, and DTSC oversight costs.

88.    From approximately 1965 and continuing until present, Defendants were dry-cleaning tenants at the Shopping Center under written leases with Plaintiff, the Shopping Center owner.



89.     By the terms of each and every lease between Plaintiff and Defendants, Defendants' obligations include, but not limited to:

    a.  complying with all rules and regulations, whether municipal, state or federal, then in force and effect;

    b.  keeping the Property in good and sanitary order, condition and repair; and

    c.   indemnifying (including a duty to defend) and holding Plaintiff harmless from all liability, loss, costs and obligations on account of or arising out of any injuries or damages that occurred on the Property.

90.     Plaintiff has demanded that Defendants defend, indemnify and hold Plaintiff harmless, but none of the Defendants have provided a defense, indemnity or held Plaintiff harmless.

91.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of equipment malfunctions.

92.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site due to the willful, intentional, reckless, negligent, or improper use, handling, storage, and/or disposal practices of the dry-cleaning operations.

93.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of one or more boil overs of the cooker.

94.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of lack of proper maintenance of a dry-cleaning equipment.

95.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site as a result of one or more worn or failed gaskets.

96.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site during the delivery of PCE.

/ / /



97.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site when spent filter materials were placed in the trash or dumpster or other unmarked containers.

98.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site when separator water contaminated with Chemicals of Concern were emptied, released, and discharged into the sewer system, down a drain, or down a toilet.

99.     Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site when separator water contaminated with Chemicals of Concern were emptied, released, and discharged outside the back door onto the ground.

100.    Defendants owned or operated a dry-cleaning business at the time Chemicals of Concern were spilled, released, and discharged at the Site when dry-cleaning equipment was dismantled and removed from the Property.

101.    Defendants owned or operated a dry-cleaning business at the Site without a hazardous materials storage or generator permit, as required by applicable federal, state, or local laws.

**FIRST CAUSE OF ACTION**
**(Imminent and Substantial Endangerment – RCRA § 7002(a)(1)(B))**
**(Against All Defendants except Grace Kim, William Buck, and Katherine Buck)**

102.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 101, inclusive, as though set forth in full herein.

103.    Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this action, is RCRA's citizen enforcement provision.

104.    Plaintiff brings this citizen suit against the following defendants: Raymond Menzie; Sharon Menzie; Robert Biancalana; Sue Biancalana; Soon Tae Yang; and Mi J. Yang (collectively, "RCRA Defendants").

105.    Any person may bring a lawsuit under RCRA § 7002(a)(1)(B) when: (a) a "solid or hazardous waste" (b) "may present an imminent and substantial endangerment to health or the



environment" and (c) the defendant falls within one of the categories of entities that Congress declared liable for taking abatement action or "such other action as [this Court determines] may be necessary."

106.    The persons declared liable by Congress for abatement of potential endangerments under RCRA § 7002(a)(1)(B) are entities that contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "hazardous wastes" and "solid wastes" at issue. Pursuant to the express terms of RCRA § 7002(a)(1)(B), these entities specifically include "any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility."

107.    Under RCRA § 1004(27), 42 U.S.C. § 6903(27), "solid waste" is "discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."  The term, however, does not include "solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under Section 1342 of Title 33 . . . ."

108.    None of the discharges from RCRA Defendants are solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under Section 1342 of Title 33.

109.    Under Section 1004(5) of RCRA, 42 U.S.C. § 6903(5), "hazardous waste" is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may . . . pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of, or otherwise managed."

110.    Under Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."



111.   Pursuant to authority under Section 3001 of RCRA, 42 U.S.C. § 6921, the Administrator of the U.S. E.P.A. promulgated regulations at 40 C.F.R., Part 261 listing or identifying certain hazardous wastes that the Administrator elects to subject to the strict regulatory program established in Subtitle III of RCRA, 42 U.S.C. §§ 6921-6931.   Pursuant to RCRA § 7006(a)(1), 42 U.S.C. § 6976(a)(1), any RCRA hazardous waste finally so "listed or identified" by the Administrator following formal, "notice and comment" rule-making as being subject to the hazardous waste regulatory program set forth in Subtitle III of RCRA, has been finally and conclusively determined for all purposes of any RCRA enforcement action, including the instant one, to be a "hazardous waste" as defined by RCRA § 1004(5).  However, for purposes of RCRA § 7002(a)(1)(B) citizen suits, substances also qualify as "hazardous wastes" and "solid wastes" when the above statutory definitions (i.e., those set forth in RCRA §§ 1004(5) and (27)) are met. (40 C.F.R. § 261.1(b)(2).)

112.   Plaintiff and each RCRA Defendant are each a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15).

113.   The Chemicals of Concern released into the environment by RCRA Defendants are solid wastes because they are discarded material resulting from commercial operations.

114.   The Chemicals of Concern released into the environment by RCRA Defendants, and each of them, are "hazardous wastes" because of their concentrations, or physical or chemical characteristics, they pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

115.   The Chemicals of Concern are also listed wastes. 40 CFR § 261.33.

116.   Each RCRA Defendant caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of "solid wastes," "hazardous wastes," "wastes," and "hazardous substances" in the environment in, at, and around the Site because each RCRA Defendant released or otherwise discarded Chemicals of Concern, from the equipment controlled by the RCRA Defendants and  failed to prevent or abate this "solid waste," "hazardous waste," "waste," and "hazardous substance" contamination from entering the environment.

/ / /



117.   The presence of Chemicals of Concern at and around the Site may present an imminent and substantial endangerment to human health or the environment.

118.   The RCRA Defendants' liability for the Site investigation, mitigation, and abatement of the contamination at, under, and emanating to or from the Site, for Plaintiff's attorneys' fees, and for such relief as the Court may determine appropriate and necessary under RCRA § 7002(a)(1)(B) and RCRA § 7002(e), 42 U.S.C. § 6972(a)(1)(B) and 42 U.S.C. 6972(e), is strict, joint and several.

119.   Plaintiff gave the U.S. Attorney General, the EPA Administrator, the appropriate state agencies and each alleged violator notice of the commencement of this action, as required by RCRA § 7002(b)(2)(F), 42 U.S.C. § 6972(b)(2)(F).

120.   The contamination released or discharged by the RCRA Defendants has already caused environmental damage at and in the vicinity of the Site and will continue to cause and contribute to actual harm, or the threat or risk of harm, until the investigation, mitigation and abatement of the Chemicals of Concern contamination at the Site is completed.

121.   Plaintiff is entitled to relief under RCRA § 7002(a), 42 U.S.C. § 6972(a), restraining the RCRA Defendants and requiring each of them, jointly and severally, to take such action, including a complete, timely and appropriate investigation and abatement of all actual and potential endangerments arising from the released Chemicals of Concerns at, under, and emanating to or from the Site.

### SECOND CAUSE OF ACTION
**(Cost Recovery and Interest – CERCLA § 107(a)**
**(Against All Defendants)**

122.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 121, inclusive, as though set forth in full herein.

123.   The Property and Site is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).  Facility means: ". . .(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed,



or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." CERCLA § 101(9), 42 U.S.C. § 9601(9).

124.    The dry-cleaning equipment owned and operated by Defendant Soon Tae Yang at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

125.    The dry-cleaning equipment owned and operated by Defendant Mi J. Yang at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

126.    The dry-cleaning equipment owned and operated by Defendant Raymond Menzie at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

127.    The dry-cleaning equipment owned and operated by Defendant Sharon Menzie at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

128.    The dry-cleaning equipment owned and operated by Defendant Robert Biancalana at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

129.    The dry-cleaning equipment owned and operated by Defendant Sue Biancalana at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

130.    The dry-cleaning equipment owned and operated by Defendant William Buck at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

131.    The dry-cleaning equipment owned and operated by Defendant Katherine Buck at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

132.    The dry-cleaning equipment owned and operated by Defendant Grace Kim at the Property is a "facility," as that term is defined in CERCLA § 101(9), 42 U.S.C. § 9601(9).

133.    The owner and operator of a facility from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a).

134.    An owner or operator is defined as "in the case of an onshore facility …, any person owning or operating such facility …." CERCLA § 101(20)(A); 42 U.S.C. § 9601(20)(A).

135.    Defendant Soon Tae Yang owns and operates a facility at the Property.

136.    Defendant Mi J. Yang owns and operates a facility at the Property

137.    Defendant Raymond Menzie owned and operated a facility at the Property.



138.  Defendant Sharon Menzie owned and operated a facility at the Property.

139.  Defendant Robert Biancalana owned and operated a facility at the Property.

140.  Defendant Sue Biancalana owned and operated a facility at the Property.

141.  Defendant William Buck owned and operated a facility at the Property.

142.  Defendant Katherine Buck owned and operated a facility at the Property.

143.  Defendant Grace Kim owned and operated a facility at the Property.

144.  "Any person who, at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of," from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance is liable under CERCLA § 107(a)(2), 42 U.S.C. § 107(a)(2).

145.  The term "disposal" in CERCLA, 42 U.S.C. § 9601(29) refers to the definition of "disposal" in RCRA, 42 U.S.C. § 9603(3). Under Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."

146.  Defendant Raymond Menzie disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

147.  Defendant Sharon Menzie disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

148.  Defendant Robert Biancalana disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

149.  Defendant Sue Biancalana disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

150.  Defendant William Buck disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

151.  Defendant Katherine Buck disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.



152.   Defendant Grace Kim disposed of or released hazardous substances during Defendant's ownership and operation of the facility at the Property.

153.   A "release" or threatened release of a "hazardous substance," as those terms are defined in CERCLA §§ 101(22), (14), 42 U.S.C. §§ 9601(22), (14), has occurred at the Site.

154.   Defendants are the owners and operators of the dry-cleaning facilities from which there has been a disposal or release (or a threatened release which has caused Plaintiff to incur response costs) of a hazardous substance.

155.   Defendants caused or contributed to the spilling, leaking, disposal, and release of hazardous substances during their ownership or operation of the Defendants' dry-cleaning business at the Property.

156.   The term "respond" or "response" means remove, removal, remedy, and remedial action; all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.  CERCLA §§ 101(25), 42 U.S.C. §§ 9601(25).

     a.  The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act [42 U.S.C. 5121 et seq.].  CERCLA §§ 101(23), 42 U.S.C. §§ 9601(23).

     b.  The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any



monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.  CERCLA §§ 101(24), 42 U.S.C. §§ 9601(24).

157.   Response costs include all efforts and activities related to remove, removal, remedy, and remedial action; all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.

158.   Response costs include work related to the identification of potential responsible parties which have caused or contributed to the disposal, release, or threatened release of hazardous substances at the Site.

159.   Response costs include work related to initial preliminary investigation of hazardous substances at the Site.

160.   Response costs include lead agency oversight costs which related to the investigation, mitigation, and removal of hazardous substances at the Site.

161.   Plaintiff has incurred, and will continue to incur, response costs in response to the Chemicals of Concern disposed of, released, or threatened to be released (including the continued migration of the Chemicals of Concern within the environment) of hazardous substances at the Site.

162.   As a result of the disposal, release, or threatened release of hazardous substances at the Site, Plaintiff has incurred response costs and will continue to incur response costs.

163.   Plaintiff incurred response costs when it undertook various response actions in connection with the investigation, mitigation and removal of hazardous substances disposed of, released, or threatened to be released (including migration of the Chemicals of Concern) by Defendants at the Site.

164.   Plaintiff's response costs incurred include payments to environmental consultants to conduct initial preliminary environmental investigations at the Property in amount of at least $34,000.  Additional response costs via environmental consultants will continue to be incurred by



-18-

further investigation, mitigation, and abatement and cleanup efforts related to the hazardous substances disposed of, released, or threatened to be released (including migration of the Chemicals of Concern) by Defendants at the Site.

165.    These initial preliminary environmental investigation costs incurred by Plaintiff related to the dry-cleaning operations at the Property were necessary to investigate the Chemicals of Concern from the dry-cleaning operations at the Property.

166.    The initial preliminary environmental investigation costs incurred by Plaintiff are generally recoverable irrespective of NCP compliance.

167.    Plaintiff's response costs incurred also include payments to the lead oversight agency, DTSC, in an amount of at least $34,944.80.

168.    The response cost payments by Plaintiff to DTSC are NCP compliant response costs.

169.    Plaintiff has incurred DTSC oversight costs and these required agency oversight costs are consistent with NCP.

170.    Plaintiff's past response costs, as well as additional response costs and future response costs, related to the Site investigation, mitigation, and abatement of the Chemicals of Concern will continue until at least the investigation, mitigation, and abate of the Chemicals of Concern has been completed sufficient to allow the DTSC to provide Plaintiff with a no further action determination.

171.    Defendants stored, treated, released, and disposed of hazardous substances at the Property, and otherwise owned, handled, controlled the lease hold space at the Property during the time that hazardous substances were disposed of or released at the Site.

172.    Defendants, and each of them, are thereby jointly and severally liable under section 107(a) of CERCLA § 107(a), 42 U.S.C. § 9607(a). Plaintiff did not cause or contribute to the environmental contamination at the Site and deny that it is liable for costs incurred as the result of the alleged disposal, release or threatened release of hazardous substances at the Site.  However, in the interest of an expeditious cleanup and acting in good faith, Plaintiff has incurred and continues to incur response costs to investigate, remove, and remediate the environmental contamination at the Site consistent with the NCP. CERCLA § 107(a), 42 U.S.C. § 9607(a).



173.   Defendants are strictly liable to Plaintiff for the costs referred to above and for interest on those costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

**THIRD CAUSE OF ACTION**
**(Indemnity and Contribution Under California's Hazardous Substance Account Act)**
**(Against All Defendants)**

174.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 173, inclusive, as though set forth in full herein.

175.   The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code § 25300 et seq. ("HSAA"), was enacted to encourage the expedient cleanup of "hazardous substances" that have been released into the environment.  In furthering this goal, the California Legislature included the statutory right of indemnity and contribution for those parties who clean up contaminated properties from those parties who are responsible for the contamination.

176.   118.   Health & Safety Code § 25363(d) provides that "a person who has incurred response or corrective action costs in accordance with this chapter, Chapter 6.5 (commencing with Section 25100), or the federal act [referring to CERCLA] may seek contribution or indemnity from any person who is liable pursuant to this chapter."

177.   A "liable person" is defined in section 25323.5(a)(1) of HSAA as "those persons described in section 107(a) of [CERCLA] (42 U.S.C. Sec. 9607(a))."

178.   "Those persons described in section 107(a)" of CERCLA include the owner and operator of a facility, any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed, and any person who arranged for disposal or treatment of hazardous substances for transport to a disposal facility.  42 U.S.C. § 9607(a).

179.   Plaintiff is a "person" within the meaning of section 25319 of the Health & Safety Code.

180.   Defendant Raymond Menzie is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

/ / /



181.    Defendant Sharon Menzie is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

182.    Defendant Robert Biancalana is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

183.    Defendant Sue Biancalana is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

184.    Defendant William Buck is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

185.    Defendant Katherine Buck is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

186.    Defendant Grace Kim is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

187.    Defendant Soon Tae Yang is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

188.    Defendant Mi J. Yang is a "liable person" within the meaning of section 25323.5(a)(1) of the Health & Safety Code and 42 U.S.C. § 9607(a).

189.    As a direct and proximate result of Defendants' actions that caused or contributed to releases of hazardous substances at the Site, Plaintiff has incurred and will continue to incur costs for removal or remedial actions taken in accordance with Chapter 6.5 commencing with Health & Safety Code § 25100 and/or CERCLA.  These include, but are not limited to, costs incurred for investigation, testing, site assessment, monitoring and remediation of the contamination.

190.    Plaintiff gave the Department of Toxic Substances Control ("DTSC") notice of the commencement of this action, as required by section 25363(d) of the Health & Safety Code.

191.    Accordingly, under strict liability imposed by the HSAA, Plaintiff is entitled to indemnity and contribution from Defendants for the past and future costs of such removal or remedial action, including any work or activities related to such removal or remedial action such as investigation, mitigation, or cleanup and abatement work at the Site.

/ / /



**FOURTH CAUSE OF ACTION**
**(Abatement of and Damages from a Continuing Public Nuisance)**
**(Against All Defendants)**

192.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 191, inclusive, as though set forth in full herein.

193.   California Civil Code § 3479 defines a "nuisance," in relevant part, as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin."

194.   California Civil Code § 3480 defines a "public nuisance" as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

195.   California Code of Civil Procedure § 731 provides that "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the [California] Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor."

196.   Defendant Raymond Menzie caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant  released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

197.   Defendant Sharon Menzie caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.



198.   Defendant Robert Biancalana caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

199.   Defendant Sue Biancalana caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

200.   Defendant William Buck caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

201.   Defendant Katherine Buck caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

202.   Defendant Grace Kim caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled

via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

203.   Defendant Soon Tae Yang caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

204.   Defendant Mi J. Yang caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

205.   Defendant Raymond Menzie's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

206.   Defendant Sharon Menzie's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

207.   Defendant Robert Biancalana's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

208.   Defendant Sue Biancalana's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

/ / /

/ / /



209.   Defendant William Buck's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

210.   Defendant Katherine Buck's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

211.   Defendant Grace Kim's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

212.   Defendant Soon Tae Yang's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

213.   Defendant Mi J. Yang's acts and omissions in causing and contributing to releases of Chemicals of Concern in, at, and around the Site created a condition that is injurious to health and is indecent or offensive to the senses.

214.   The public nuisance condition and related endangerments to health and the environment arising from released hazardous substances in, at, and around the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly-owned property and natural resources, including surface water and groundwater, creating a public health risk from the vapors intruding places of work.

215.   Defendants caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in California Civil Code §§ 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the Chemicals of Concern contamination.

216.   The release or disposal of Chemicals of Concern in the environment, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387; California Health and Safety Code sections 5411; 5411.5, and 117555; California Fish and Game Code section 5650; California Civil Code sections 3479-



3480; , California Penal Code sections 372 and 374.8; Marin County Municipal Code, including Chapters 1.05, *et seq.*, 7.82, *et seq.*, 7.83, *et seq.*, 23.18, *et seq.*, and 02.03.010; and City of Mill Valley Municipal Code, including Chapters 8.04, *et sec.*, 8.36.105, and 17.08.020, the purpose of which are to set a standard of care or conduct to protect the public and the environment from in the release and disposal of Chemicals of Concern in to the environment including the soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California by Defendants. Further, these statutes are obligatory, they prohibit the discharge of hazardous wastes.  Therefore, such improper activities, violations, and discharges constitute a nuisance *per se*.

217.    Defendants have failed to comply with federal, state, local, and common law by releasing and disposing Chemicals of Concern into the environment.

218.    Plaintiff has suffered special injury and damages as a direct and proximate result of the contamination at, under, and around the Property because Plaintiff has been required to investigate the soil, soil vapor, and groundwater.

219.    As the nuisance conditions are a continuing private nuisance, no additional special injury is required.

220.    The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

221.    Plaintiff did not consent to Defendants' conduct in causing and contributing to the public nuisance.

222.    Defendants are strictly and jointly and severally liable for abatement of the public nuisance.

223.    Plaintiff is entitled to relief restraining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the public nuisance and for reimbursing Plaintiff for all response, monitoring and investigation costs incurred and to be incurred at the Site.

/ / /

/ / /



**FIFTH CAUSE OF ACTION**
**(Abatement of and Damages from a Continuing Private Nuisance)**
**(Against All Defendants)**

224.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 224, inclusive, as though set forth in full herein.

225.    Defendant Raymond Menzie caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

226.    Defendant Sharon Menzie caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

227.    Defendant Robert Biancalana caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

228.    Defendant Sue Biancalana caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

229.    Defendant William Buck caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

230.    Defendant Katherine Buck caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

231.    Defendant Grace Kim caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

232.    Defendant Soon Tae Yang caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

233.    Defendant Mi J. Yang caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Chemicals of Concern in the environment in, at, and around Site, including the waters of the State of California, because Defendant released or otherwise discarded those contaminants during Defendant's dry-cleaning operations or controlled



via leasehold a portion of the Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

234.    Defendants' acts and omissions contributed to or caused releases of Chemicals of Concern in, at, and around the Site, which have interfered with Plaintiff's free use and enjoyment of its Property as Plaintiff is unable to sell its Property and has incurred and will incur investigation, mitigation, abatement, response and remediation costs in order to redevelop the Property.

235.    The release or disposal of Chemicals of Concern, as alleged herein, constitutes a nuisance as the release or disposal is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, California Civil Code sections 3479-3480, California Penal Code sections 372 and 374.8, Marin County Municipal Code, including Chapters 1.05, *et seq.*, 7.82, *et seq.*, 7.83, *et seq.*, 23.18, *et seq.*, and 02.03.010, and City of Mill Valley Municipal Code, including Chapters 8.04, *et sec.*, 8.36.105, and 17.08.020, the purpose of which are to set a standard of care or conduct to protect the public and the environment from in the release and disposal of Chemicals of Concern in to the environment including the soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California by Defendants. Further, these statutes are obligatory, they prohibit the discharge of hazardous wastes. Therefore, such improper activities, violations, and discharges constitute a nuisance *per se*.

236.    Defendants failed to comply with federal, state, local, and common law by releasing and disposing Chemicals of Concern into the environment.

237.    The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

238.    Plaintiff did not consent to Defendants' conduct in causing and contributing to the private nuisance.

239.    Defendants are strictly and jointly and severally liable for abatement of the private nuisance.

240.    As a direct and proximate result of the acts, omissions, and conduct of each of the Defendants, Plaintiff has suffered and continues to suffer damages as alleged herein.

241.     Plaintiff is entitled to injunctive relief restraining and enjoining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the alleged private nuisance and to reimburse him for all past and future response, monitoring and investigation costs and other damages.

**SIXTH CAUSE OF ACTION**
**(Continuing Trespass)**
**(Against All Defendants)**

242.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 241, inclusive, as though set forth in full herein.

243.     Defendant Raymond Menzie, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

244.     Defendant Sharon Menzie, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

245.     Defendant Robert Biancalana, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

246.     Defendant Sue Biancalana, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.



247.    Defendant William Buck, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

248.    Defendant Katherine Buck, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

249.    Defendant Grace Kim, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

250.    Defendant Soon Tae Yang, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

251.    Defendant Mi J. Yang, without the consent or knowledge of Plaintiff, released Chemicals of Concern and knew or should have known that any such release would contaminate the soil, soil vapor, and groundwater at, beneath, and around the Site; and that unless the release was immediately contained and cleaned up, it would spread and travel through the soil, surface water, and groundwater into adjacent properties and buildings.

252.    The Chemicals of Concerns on Plaintiff's Property constitute a wrongful entry or other invasion of or to the right of private occupancy.

/ / /



253. Unless Defendants are ordered immediately to clean up the contamination of the soil, soil vapor, and groundwater, it will be necessary for Plaintiff to commence many successive actions against Defendants to secure compensation for the damages sustained, thus requiring a multiplicity of suits.

254. Plaintiff has no adequate remedy at law for the injuries suffered by reason of the acts, omissions, and conduct of Defendants and by reason of the trespass committed by them, and this Court should grant injunctive relief to compel Defendants immediately to investigate and clean up the contamination of the soil, soil vapor, and groundwater at, beneath, and around the Site.

255. As a direct and proximate result of the acts, omissions, and conduct of Defendants and of the continuing trespass caused thereby, Plaintiff has suffered and continues to suffer damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(Negligence)**
**(Against All Defendants)**

256. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 255, inclusive, as though set forth in full herein.

257. On or about 1965, and continuing until present, Defendants were in possession and control of the Property and had a duty to maintain the real property in good repair and condition free from any hazardous waste.

258. Defendants, while owning and operating their businesses at the Property, owed a duty to Plaintiff to use, store, maintain, monitor, and remove Chemicals of Concern in a safe and careful manner. Defendants also owed a duty to Plaintiff to avoid storing, disposing of, releasing, or allowing to be released any contaminants in a manner that would cause injury to Plaintiff, the Property, the Site, the public, health, or the environment.

259. On or about 1965, and continuing until present, Defendants breached their duty to Plaintiff in that they negligently maintained, controlled, managed and used the subject property and caused such property to go into serious disrepair and caused contamination in the soil and the water table underneath. Defendants also breached their duties by negligently, carelessly, recklessly, and



illegally using, storing, transporting, maintaining, monitoring, and removing Chemicals of Concern in a way that contaminants were released into the environment.

260.    The breach was not discovered until Plaintiff conducted subsurface sampling of the Property in 2018.

261.    By virtue of the facts and circumstances of the contamination in and around the Site, as alleged herein, the doctrine of *res ipsa loquitur* is applicable to the claim against each of the Defendants.  Under such doctrine, the burden of proving that Defendants' operations were free from all negligence in connection with the releases of Chemicals of Concern at the Site is placed on Defendants and the burden of proving freedom from liability in connection with the contamination is placed on Defendants.  In the event any or all of Defendants fail to sustain their respective burdens, they are legally responsible for the damages asserted herein.  Under the circumstances, the contamination of the soil, soil vapor, indoor air, and groundwater at and around the Site would not have happened but for negligence on the part of Defendants, their agents, servants, and employees, in the manner in which they conducted their respective operations.

262.    In the alternative to the allegation that the doctrine of *res ipsa loquitur* is applicable against Defendants, the contamination and resulting property damage and response costs were due to the negligence of Defendants in their operations and that each of the Defendants is guilty of negligence proximately causing the contamination.

263.    Defendants failed promptly and diligently to contain and clean up the contamination caused by their releases of Chemicals of Concern.

264.    The releases of Chemicals of Concern would not have occurred absent some form of negligence by Defendants, and each of them; the releases of contaminants were caused by something within the exclusive control of one or more of the Defendants; and that such release was not due to any voluntary action or contribution on the part of Plaintiff.

265.    The release or disposal of Chemicals of Concern is a violation of California Water Code sections 13050(m), 13350, and 13387, California Health and Safety Code sections 5411, 5411.5, and 117555, California Fish and Game Code section 5650, California Civil Code sections 3479-3480, California Penal Code sections 372 and 374.8, Marin County Municipal Code,

including Chapters 1.05, *et seq.*, 7.82, *et seq.*, 7.83, *et seq.*, 23.18, *et seq.*, and 02.03.010, and City of Mill Valley Municipal Code, including Chapters 8.04, *et sec.*, 8.36.105, and 17.08.020, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the release and disposal of Chemicals of Concern in to the environment including the soil, land, subsurface strata, air, vapor, groundwater, surface water, and the waters of the state of California by Defendants. Further, these statutes are obligatory, they prohibit the discharge of hazardous wastes by anyone. Therefore, such improper activities and violations constitute negligence *per se*.

266.    The injury and damages that Plaintiff complains of herein resulted from the kind of occurrence the statutory provisions were designed to prevent.

267.    Plaintiff is part of the class of persons the statutory provisions were intended to protect, as Plaintiff is a property owner that has been adversely impacted by Defendants' violations of said statutory provisions.

268.    Defendants failed to comply with federal, state, local, and common law by releasing and disposing Chemicals of Concern into the environment.

269.    As a direct and proximate result of Defendants' failure to comply with applicable statutory provisions, Plaintiff has incurred and will continue to incur expenses, losses, injury and damages, including consequential, incidental and general damages to be proven at trial.

270.    The above-described acts, omissions, and conduct of Defendants have been without the consent, knowledge, against the will, and in violation of the rights of Plaintiff.

**EIGHTH CAUSE OF ACTION**
**(Ultrahazardous Activity)**
**(Against All Defendants)**

271.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 270, inclusive, as though set forth in full herein.

272.    Defendants engaged in the ultrahazardous activity of handling, storing, transporting, and releasing Chemicals of Concern into the soil and groundwater, notwithstanding the fact that the toxic materials are a serious and substantial risk of harm to health, including cancer, liver disease, and death.



273.     Handling, storing, transporting, and releasing toxic materials is unsafe and harmful, even when the utmost care is utilized in the use and disposal of such materials.

274.     Defendants' handling, storage, transportation, and releases of Chemicals of Concern as alleged herein necessarily involves a risk of serious harm which is not a matter of common usage.

275.     Defendants' handling, storage, transportation, and releases of Chemicals of Concern as alleged herein necessarily involves a risk of serious harm which cannot be eliminated by the exercise of utmost care and is not a matter of common usage.

276.     The executive and legislative branches in California have determined that the use, handling, and storage of PCE in the dry-cleaning industry should be phased out because of the risk of serious harm to human health and/or the environment resulting from spills of PCE by dry-cleaning businesses, which cannot be eliminated by the exercise of utmost care.

277.     Defendants recognized, or should have recognized, that the Site was likely to be harmed by Defendants' use and release of Chemicals of Concern into the soil and groundwater.

278.     Defendants recognized, or should have recognized, that the use and release of Chemicals of Concern into the soil and groundwater at the Shopping Center is inappropriate given the proximity of such activities to other businesses and residences.

279.     Defendants recognized, or should have recognized, that the dangerous attributes relating to the use and release of Chemicals of Concern into the soil and groundwater outweighs the value to the community.

280.     As a direct and proximate result of this ultrahazardous activity, Plaintiff has incurred and will continue to incur expenses, losses, injury and damages as set forth herein.

**NINTH CAUSE OF ACTION**
**(Waste)**
**(Against All Defendants)**

281.     Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 280, inclusive, as though set forth in full herein.

282.     Pursuant to the terms of the written lease agreements from on or about approximately 1965 to present, Defendants and each of them entered into and maintained possession of the Property.



283. From on or about 1965 and continuing until present, Defendants have caused injury to the Property by committing waste in the form of Chemicals of Concern contaminating the soil, soil vapor and groundwater.

284. Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that it had suffered harm that was caused by someone's wrongful conduct.

285. The harm was not discovered until Plaintiff conducted subsurface sampling at the Property in 2018 after being ordered to do so by DTSC.

286. The Chemicals of Concerns on Plaintiff's Property constitute a wrongful entry or other invasion of or to the right of private occupancy.

287. Each act and omission of Defendants as alleged herein was done intentionally and over the objection of Plaintiff in contravention to the terms of the leases. Those Defendants willfully and maliciously engaged in such conduct with the full knowledge that it would result in substantial damage to the Property and Plaintiff's interest. Therefore, Plaintiff is entitled to recover treble damages from Defendants under California Code of Civil Procedure section 732.

288. As a direct and proximate result of Defendants' waste, Plaintiff has been damaged and will continue to suffer damages, including response costs, attorneys' fees, and expert witness fees.

**TENTH CAUSE OF ACTION**
**(Equitable Indemnity)**
**(Against All Defendants)**

289. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 289, inclusive, as though set forth in full herein.

290. The liability, if any, that Plaintiff may have to any person or entity, including, without limitation, any government or regulatory agency, under any law, regulation, or common law principle, relating to the contamination at the Site, is the result, in whole or in part, of the acts or omissions of Defendants.

/ / /

/ / /



291.    The Plaintiff has incurred liability as a result of the voluntary cleanup agreement it entered into with DTSC to investigate and remediate the contamination at and around the Site. The agreement was entered into on April 24, 2019.

292.    As between Plaintiff and Defendants, Defendants are solely responsible for all costs and expenses to investigate and clean up the contamination at and around the Site.

293.    As between Plaintiff and Defendants, Defendants are responsible for any legal or administrative actions that have been brought, or may be brought in the future, by any public or private persons concerning or related to the presence of the contaminants at and around the Site.

294.    In the event that Plaintiff is adjudged liable for any or all relief requested in any judicial or administrative action, arising out of or related to the presence of contaminants at and around the Site, brought against Plaintiff by any persons or entities, public or private, such liability is purely secondary, imputed, or technical.  Primary and actual liability attaches to Defendants and is a direct and proximate result of the acts, omissions, and conduct of Defendants.

295.    As a direct and proximate result of the acts, omissions, and conduct of Defendants, as herein alleged, Defendants are bound and obligated to indemnify and hold harmless Plaintiff from and against all response costs, arising out of, or relating in any way to the contamination at the Site, and any other costs heretofore or hereafter incurred by Plaintiff in responding to the releases or threatened releases of Chemicals of Concern at the Site.

**ELEVENTH CAUSE OF ACTION**
**(Breach of Lease)**
**(Against All Defendants)**

296.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 295, inclusive, as though set forth in full herein.

***Think Clean Cleaners***

297.    In 1970, Defendants Raymond Menzie, Sharon Menzie, Robert Biancalana and Sue Biancalana entered into a written lease agreement for Think Clean Cleaners with Plaintiff for the 389 Miller Avenue property. That lease is attached to this complaint as Exhibit 1 and is incorporated into this Complaint.

/ / /



298.    The 1970 lease included terms requiring the lessees to make all repairs to the leased premises including to the plumbing at paragraph 7 of Exhibit 1.

299.    The 1970 lease included terms requiring the lessees to use the said premises for a retail dry-cleaning store at paragraph 3 of Exhibit 3.

300.    The 1970 lease included terms requiring the lessees to indemnify and hold harmless Plaintiff at paragraph 8 of Exhibit 1.

301.    The 1970 lease included terms requiring the lessees to maintain liability insurance and name Plaintiff as an additional insured at paragraph 9 of Exhibit 1.

302.    The 1970 lease also included an attorney's fees provision which requires the lessees to pay fees and costs for any litigation concerning the lease or arising from the lessees' acts or omissions as well as holding Plaintiff harmless at paragraph 19 of Exhibit 1.

303.    In 1979, Defendant Raymond Menzie and Defendant Robert Biancalana entered into another lease for the Property with Plaintiff (the "1979 lease"). That lease is attached to this Complaint as Exhibit 2 and is incorporated by reference.

304.    In the 1979 lease, the premises were to be used for a dry-cleaning retail store as stated at paragraph 6.1 of Exhibit 2.

305.    In the 1979 lease, the tenants, Defendant Raymond Menzie and Defendant Robert Biancalana, were not to use the Property in such a way as to create waste or cause a nuisance as stated in paragraph 6.2 of Exhibit 2.

306.    In the 1979 lease, the tenants, Defendant Raymond Menzie and Defendant Robert Biancalana, were to maintain the plumbing of the Property as stated in paragraph 7.2 of Exhibit 2.

307.    In the 1979 lease, the tenants, Defendant Raymond Menzie and Defendant Robert Biancalana, were to maintain liability insurance for both themselves and Plaintiff as stated in paragraph 8.1 of Exhibit 2.

308.    The 1979 lease also includes a provision requiring the tenants, Defendant Raymond Menzie and Defendant Robert Biancalana to indemnify, defend and hold Plaintiff harmless as stated in paragraph 8.3 of Exhibit 2.

/ / /



309. The 1979 lease also stated that any assignment of the lease would not relieve the tenants, Defendant Raymond Menzie and Defendant Robert Biancalana, from their obligations under the lease as stated in paragraph 12.2 of Exhibit 2.

310. The 1979 lease contains an attorney's fees provision at paragraph 15.14 of Exhibit 2.

311. On September 18, 1979, the 1979 lease was assigned to Defendant William Buck and Defendant Katherine Buck. That assignment is attached to this complaint as Exhibit 3 and is incorporated into this Complaint.

312. The assignment stated that Defendant William Buck and Defendant Katherine Buck were bound by the terms and conditions of the 1979 lease and that Defendant Raymond Menzie and Defendant Robert Biancalana were secondarily liable should Defendant William Buck and Defendant Katherine Buck default on their obligations.

313. The 1979 lease provisions as laid out above in paragraphs 304 to 310 also bound Defendant William Buck and Defendant Katherine Buck.

314. On April 22, 1987, Defendant Grace Kim was granted an extension of the 1979 lease. That amendment to the lease is attached to this Complaint as Exhibit 4 and is incorporated into this Complaint.

315. Defendant Grace Kim was bound by the same provisions of the 1979 lease as laid out above in paragraphs 304 to 310.

316. On May 3, 1996, Defendants Soon Tae Yang and Mi J. Yang entered into a written lease agreement for the Think Clean Dry Cleaners with Plaintiff for the Property (the "1996 lease"). The lease was then extended and mended on May 1, 2006. That 1996 lease with the 2006 extension and amendment is attached to this Complaint as Exhibit 5 and is incorporated into this Complaint.

317. The 1996 lease included terms requiring Defendants Soon Tae Yang and Mi J. Yang to indemnify and hold harmless Plaintiff from claims and liabilities arising from their acts or omissions at paragraph 18.3 of Exhibit 5.

318. The lease included terms requiring Defendants Soon Tae Yang and Mi J. Yang to maintain liability insurance and add Plaintiff as an additional insured at Article 18.1 of Exhibit 5.



319.   Contained within the written contracts are provisions for fees.  As a result of the breach of the agreements by the Defendants, Plaintiff was forced to hire counsel and expend fees and costs.  Accordingly, Plaintiff is entitled to recoup said fees and costs in an amount to be determined by the Court.

***Allegations against all Defendants relating to all lease agreements***

320.   Plaintiff did not discover, and did not know of facts that would have caused a reasonable person to suspect, that it had suffered harm that was caused by someone's wrongful conduct.

321.   The harm was not discovered until Plaintiff conducted subsurface sampling at the Property in 2018 after being ordered to do so by DTSC.

322.   Claims by DTSC against Plaintiff allege liability for contamination in connection with the subject property during Defendants' lease terms.

323.   Plaintiff tendered a claim for indemnity for environmental liabilities to Raymond Menzie.

324.   Defendant Raymond Menzie has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

325.   Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Sharon Menzie.

326.   Defendant Sharon Menzie has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

327.   Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Robert Biancalana.

328.   Defendant Robert Biancalana has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

329.   Plaintiff tendered a claim for indemnity for environmental liabilities to Sue Biancalana.

330.   Defendant Sue Biancalana has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.



331. Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant William Buck.

332. Defendant William Buck has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

333. Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Katherine Buck.

334. Defendant Katherine Buck has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

335. Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Grace Kim.

336. Defendant Grace Kim has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

337. Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Soon Tae Yang.

338. Defendant Soon Tae Yang has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

339. Plaintiff tendered a claim for indemnity for environmental liabilities to Defendant Mi J. Yang.

340. Defendant Mi J. Yang has refused to defend Plaintiff, indemnify Plaintiff and hold Plaintiff harmless pursuant to the written leases.

341. Plaintiff has demanded that Defendants defend and indemnify them for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

342. Plaintiff has performed all conditions, covenants, and promises required by them, on their part to be performed, in accordance with the terms and conditions of the written leases.

343. Defendants also breached their obligations under the written leases by causing Chemicals of Concern to contaminate the soil, soil vapor, indoor air, and groundwater at, beneath and emanating from the Site in violation of municipal, state and federal laws.



344.   Defendants further breached their written leases by allowing the Property to fall into disrepair.

345.   Defendants further breached their written leases by failing to give written notice to Plaintiff of the release of Chemicals of Concern at the Property.

346.   The above material facts constitute breaches of the written leases by Defendants. The acts, omissions, and conduct of Defendants further breached the implied covenant of good faith and fair dealing contained in the written leases.

347.   As a direct and proximate result of Defendants' breach of the leases set forth above, Plaintiff has been damaged and will continue to suffer damages, including attorneys' fees, expert witness fees, and emotional distress.

### TWELFTH CAUSE OF ACTION
#### (Contractual Indemnification)
#### (Against All Defendants)

348.   Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 347, inclusive, as though set forth in full herein.

349.   Defendant Raymond Menzie entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

350.   Defendant Sharon Menzie entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

351.   Defendant Robert Biancalana entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

352.   Defendant Sue Biancalana entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

353.   Defendant William Buck entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

/ / /



354. Defendant Katherine Buck entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

355. Defendant Grace Kim entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

356. Defendant Soon Tae Yang entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

357. Defendant Mi J. Yang entered into indemnity agreements that require Defendant to hold harmless and indemnify and defend Plaintiff. See Exhibits 1-5 attached to the Complaint.

358. Plaintiff has demanded that Defendant Raymond Menzie defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

359. Plaintiff has demanded that Defendant Sharon Menzie defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

360. Plaintiff has demanded that Defendant Robert Biancalana defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

361. Plaintiff has demanded that Defendant Sue Biancalana defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

362. Plaintiff has demanded that Defendant William Buck defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

363. Plaintiff has demanded that Defendant Katherine Buck defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.



COMPLAINT

364.    Plaintiff has demanded that Defendant Grace Kim defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

365.    Plaintiff has demanded that Defendant Soon Tae Yang defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

366.    Plaintiff has demanded that Defendant Mi J. Yang defend and indemnify it for the contamination caused by the Chemicals of Concern complained of, and hereby reiterate that demand.

367.    Defendant Raymond Menzie failed to defend or indemnify Plaintiff.

368.    Defendant Sharon Menzie failed to defend or indemnify Plaintiff.

369.    Defendant Robert Biancalana failed to defend or indemnify Plaintiff.

370.    Defendant Sue Biancalana failed to defend or indemnify Plaintiff.

371.    Defendant William Buck failed to defend or indemnify Plaintiff.

372.    Defendant Katherine Buck failed to defend or indemnify Plaintiff.

373.    Defendant Grace Kim failed to defend or indemnify Plaintiff.

374.    Defendant Soon Tae Yang failed to defend or indemnify Plaintiff.

375.    Defendant Mi J. Yang failed to defend or indemnify Plaintiff.

376.    As a direct and proximate result of Defendants' failure to indemnify Plaintiff, Plaintiff has been damaged and will continue to suffer damages, including attorneys' fees and expert witness fees.

### THIRTEENTH CAUSE OF ACTION
**(Declaratory Relief – CERCLA 113(g) and Cal.  Code Civ. Proc. § 1060)**
**(Against All Defendants)**

377.    Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 376, inclusive, as though set forth in full herein.

378.    An actual dispute and controversy has arisen and now exists among the parties to this action concerning their respective rights and duties in that Plaintiff contend, and Defendants



deny, that Defendants are responsible for the contamination at the Site and are obligated to contribute to the costs of the investigation and cleanup.

379.    Because the extent and magnitude of the contamination at the Site are not fully known at this time, and the investigatory and remedial works are ongoing, Plaintiff has incurred and will continue to incur necessary response costs, including but not limited to investigation, remedial and removal expenses, DTSC oversight costs, and attorneys' fees in the future.

380.    Plaintiff desires a judicial determination of its rights and duties and a declaration that Defendants are liable to Plaintiff for all responses costs incurred or to be incurred by Plaintiff at the Site as a result of releases of Chemicals of Concern, hazardous substances, and/or solid wastes by Defendants.

381.    Plaintiff is entitled to a declaratory judgment establishing the liability of Defendants for such response costs for the purpose of this and any subsequent action or actions to recover further response costs.

382.    A judicial declaration is necessary and appropriate under the present circumstances in order that Plaintiff may ascertain its rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor for the following:

1.    For a judicial determination that Defendants are jointly and severally liable for the abatement of the imminent and substantial endangerment to human health or the environment that may be presented by Defendants' use and disposal of "solid wastes" and "hazardous wastes" as alleged above;

2.    For a preliminary and permanent injunction requiring Defendants to undertake at their sole cost and consistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "NCP") at 40 C.F.R. Part 300, all actions necessary to investigate and abate the nuisance conditions and endangerments to health or the environment that may be presented by Defendants' use and disposal of "solid wastes" and "hazardous wastes" as alleged above;

///

3.     For a declaration pursuant to CERCLA § 113(g) that Defendants are obligated to pay to Plaintiff all future response costs and any other costs incurred by Plaintiff hereafter in response, removal, or remedial efforts incurred pursuant to law or the order of any governmental agency with jurisdiction over the Site;

4.     For a declaration that Defendants are liable under CERCLA § 107(a) for response costs, plus interest, and are liable to Plaintiff in contribution and/or indemnity under HSAA § 25363(e) for all past, present, and future response costs, plus interest, and other costs which may be incurred by Plaintiff in connection with the Site;

5.     For a special, reparative, preventative, mandatory injunction requiring Defendants to undertake at their sole cost all actions necessary to investigate and remediate the alleged contamination;

6.     For damages from Defendants to compensate Plaintiff for the costs they have incurred and will incur in response, removal, or remedial efforts, the exact amount of which will be ascertained according to proof;

7.     For compensatory and consequential damages in excess of $5 million;

8.     For an award to Plaintiff its costs of litigation, including attorneys' fees and expert witness fees pursuant to 42 U.S.C. § 6972(e), Cal. Code Civ. Proc. § 1021.5, and written contract;

9.     For damages and/or Treble damages for waste;

10.     For exemplary damages against Defendants according to proof;

11.     For all costs of suit herein;

12.     For such other and further relief as this Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of any and all issues so triable.

DATED: November 22, 2019          PALADIN LAW GROUP® LLP

John R. Till
Counsel for Shapiro Associates, LP

